IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMES TOMLINSON, | ) | CASE NO. 8:08CV176 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| OMAHA STEEL CASTINGS, CO., | ) | |
| | ) | |
| Defendant. | ) | |

Before this court are the Defendant's Motion for Summary Judgment *(Filing No. 28)* and Defendant's Objections to Plaintiff's Evidence Submitted in Opposition to Motion for Summary Judgment *(Filing No. 38)*. Following review of the motions, the evidence, the arguments, and the applicable law, the court sustains defendant's objections, and grants in part, and denies in part, Defendant's Motion for Summary Judgment.

**I.   BACKGROUND**

James Tomlinson (Tomlinson), began working in the molding department at Omaha Steel Castings (OSC) in 1998. *(Filing No. 30-2, Tomlinson Deposition (Dep.) 42:4-10)*. In September 2004, while on the job, Tomlinson suffered an injury to his right hand, wrist, and arm. *(Filing No. 30, Defendant's Summary Judgment Exhibits (Ex.) 2; Dep. 53:6-10)*. On February 2, 2006, Tomlinson suffered another on-the-job injury involving his neck, arms, and hands. *(Ex. 7; Dep. 62:19-23, 64:14-19)*. Tomlinson first saw Dr. Arthur West (Dr. West) and later saw Dr. Lonnie Mercier (Dr. Mercier) for treatment of his injury. *(Exs. 7, 11)*. Tomlinson was put on work restrictions *(Ex. 7)*, which included avoiding forced gripping and squeezing, pushing and pulling, and lifting over 20 pounds *(Exs. 7, 8, 9, 10, 11)*. On May 1, 2006, Dr. West released Tomlinson from care and transcribed that Tomlinson could return to regular activity. *(Ex. 12)*. Dr. West's transcription also reported, "Dr. Mercier feels there is no need for further diagnostic testing or treatment." *(Ex. 12)*. OSC claims it received Dr. West's transcription, and OSC management told Tomlinson he was fully released. *(Ex. 37; Dep. 113:13-19)*. Tomlinson contends he continued to be on

work restrictions after May 1, 2006, from Dr. Mercier, "the Specialist . . . the Company Doctor sent [Tomlinson] to." *(Dep. 84:7-19; Ex. 14)*.

On May 16, 2006, OSC management asked Tomlinson to lift and turn over a 60 pound box on a table. *(Dep. 89:18-90:6; Ex. 14)*. Tomlinson refused to lift the box, stating the box was beyond his work weight restrictions. *(Ex. 14; Dep. 111:17-20)*. OSC then fired Tomlinson citing insubordination. *(Filing No. 1, Complaint (Complaint) 3, ¶ 15; Filing No. 11, Answer (Answer) 2, ¶ 17)*. Tomlinson reported his OSC supervisor told him OSC "really fired me for going to the doctor." *(Ex. 14)*. In September 2006, Tomlinson had neck surgery, which Tomlinson testified rendered him unable to work. *(Dep. 123:7-124:14)*.

On April 17, 2008, Tomlinson filed a Complaint in this court alleging (1) OSC violated the Americans with Disabilities Act (ADA) because OSC discriminatorily fired Tomlinson based on Tomlinson's disability, Tomlinson's record of disability, or OSC's perception of Tomlinson as disabled, and (2) OSC failed to provide Tomlinson with reasonable accommodations as required by the ADA, 42 U.S.C. § 102(b)(5)(A). *(Complaint 3-5, ¶¶ 16-23)*. Tomlinson asks the court to (1) enjoin OSC from using discriminatory practices; (2) award back pay, and front pay or reinstatement; (3) grant damages for past and future pecuniary loss; (4) compensate Tomlinson for pain, suffering, and humiliation; (5) order punitive damages against OSC; and (6) require OSC to pay Tomlinson's attorney fees and costs for the action. *(Complaint 5, ¶ A - 6, ¶ G)*.

OSC moved for summary judgment on March 30, 2009 *(Filing No. 28, Motion for Summary Judgment)*, and Tomlinson replied to the motion on May 4, 2009 *(Filing No. 34, Brief in Opposition to Defendant's Motion for Summary Judgment 1)*. After Tomlinson submitted exhibits opposing OSC's motion for summary judgment, OSC objected, based on Fed. R. Civ. P. 56(e) and Neb. Civ. R. 7.0.1(b)(2)(C), to Tomlinson's evidence for lack of foundation, hearsay, relevancy, and violation of the Best Evidence Rule. *(Filing No. 38, Objections to Plaintiff's Evidence Submitted in Opposition to Motion for Summary Judgment; Filing No. 39, Reply Brief in Support of Defendant's Motion for Summary*

*Judgment (Reply Brief) 1)*. OSC's motion for summary judgment and objections are now before this court.

## II.   DISCUSSION

### A.   Objections to Tomlinson's Evidence Opposing Summary Judgment

Under Fed. R. Civ. P. 56(e) and Neb. Civ. R. 7.0.1(b)(2)(C) and 56.1, documents submitted to support or oppose a motion for summary judgment are to be accompanied by an affidavit which identifies and authenticates the documents. Documents which are not identified and authenticated properly cannot be considered by this court on summary judgment. See Hillard v. Clarke, 245 F.R.D. 419, 420-21 (D. Neb. 2007); see also Stuart v. General Motors Corp., 217 F.3d 621, 635-36 n.20 (8th Cir. 2000) (citing Cummings v. Roberts, 628 F.2d 1065, 1068 (8th Cir. 1980)); 11 James Wm. Moore et al., Moore's Federal Practice § 56.14[2][c] (3d ed. 2009) ("Unauthenticated documents, once challenged, cannot be considered by a court in determining a summary judgment motion."). The rule to identify and authenticate documents before a court may consider such evidence is elementary and fundamental to the Rule of Law.

Tomlinson's counsel failed to provide this court with affidavits identifying and authenticating Tomlinson's submitted exhibits. Further, Tomlinson's counsel fails to cite any other identifying and authenticating documents for the exhibits. Thus, OSC's objections to Tomlinson's summary judgment exhibits are sustained, and this court will not consider the challenged documents when ruling on OSC's motion for summary judgment.

### B.   OSC's Summary Judgment Motion

Notwithstanding the omission of Tomlinson's exhibits, the court finds genuine issues of material fact which preclude summary disposition of Tomlinson's causes of action. However, OSC is entitled to partial summary judgment on Tomlinson's damages.

Under Fed. R. Civ. P. 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Viewing the facts in the light most favorable

to the nonmoving party, summary judgment is appropriate only "if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Allianz Ins. Co. of Canada v. Sanftleben, 454 F.3d 853, 855 (8th Cir. 2006).

In employment discrimination cases, "summary judgment should seldom be used." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (citing Johnson v. Minn. Historical Soc'y, 931 F.2d 1239, 1244 (8th Cir. 1991); Hillebrand v. M-Tron Indus., 827 F.2d 363, 364 (8th Cir. 1987)). "Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." Id. (citing Johnson, 931 F.2d at 1244).

### 1.     Tomlinson's Discrimination Claim

OSC first argues it is entitled to summary judgment on Tomlinson's discrimination claim. A prima facie case of ADA discrimination requires the plaintiff to show (1) he has a disability as defined in the ADA, (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) he suffered adverse employment action as a result of his disability. See Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (citation omitted).

The burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), applies to ADA cases. See, e.g., Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1205-06 (8th Cir. 1997). This framework requires Tomlinson first to establish a prima facie case, and then shifts the burden to OSC to offer a legitimate, non-discriminatory reason for the adverse employment action. Id. at 1206. If OSC provides a sufficient reason, the burden then shifts back to Tomlinson to show OSC's reason is a pretext for discrimination. Id.

Viewing the record in the light most favorable to Tomlinson, Tomlinson presented sufficient evidence to state a prima facie case of ADA discrimination to defeat a motion for summary judgment. First, the evidence provides a reasonable inference Tomlinson is

disabled.[1]  In his deposition, Tomlinson testified he injured his neck, arms, and hands in February 2006 *(Dep. 62:10-64:19)*, and this injury resulted in work restrictions *(Exs. 7, 8, 9, 10)* and substantial limitation to his ability to work.  *(Dep. 37:22-38:2, 41:23-42:3, 124:6-14, 129:7-16, 134:2-24, 149:23-150:3, 160:23-161:6)*.  Tomlinson also discussed his previous injury in September 2004 involving his arm and hand *(Dep. 53:6-54:24)*.  Tomlinson claimed he told OSC management about a pop in his neck when he was injured in February 2006 *(Dep. 62:19-25)*, and reported the effects of his September 2006 neck surgery *(Dep. 124:1-14, 129:7-16)*.  This evidence creates genuine issues of material fact whether Tomlinson either (1) has a physical impairment which substantially limits a major life activity, (2) has a record of a physical impairment which substantially limits a major life activity, or (3) was regarded by OSC as having a physical impairment which substantially limits a major life activity.  See 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g).

The record also raises a genuine issue of material fact whether Tomlinson was a qualified individual under the ADA.  The relevant inquiry is whether Tomlinson could perform, with or without reasonable accommodation, the essential functions of his job.  See 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).  This determination is made at the time of the adverse employment action.  See 29 C.F.R. App. § 1630.2(m).  OSC argues Tomlinson admitted in his deposition he could not perform, both at the time of his termination and since his termination, the essential functions of his former job which included lifting up to 100 pound molds and working at a fast pace.  *(Defendant's Brief 12; Reply Brief 8)*.  Tomlinson's deposition testimony was that, *without help or by himself*, he could not perform the functions of his former job that were set forth in an OSC job description.  *(Dep. 146:19-*

---

[1] OSC did not specifically challenge whether Tomlinson was disabled in its opening brief in support of its motion.  *(Filing No. 29, Brief in Support of Defendant's Motion for Summary Judgment (Defendant's Brief) 9-12)*.  Although OSC claims in its reply brief Tomlinson seems to be proceeding solely on a "regarded as" theory and contends Tomlinson has not established he was "regarded as" disabled *(Reply Brief 6-7)*, this court does not read Tomlinson's arguments to limit his case to a "regarded as" theory.  Despite Tomlinson's counsel's confusing use of the "regarded as" language in some of his arguments, this court interprets Tomlinson's arguments to address primarily the second and third elements of Tomlinson's prima facie case.  Thus, Tomlinson's brief has not limited his initial allegations of his Complaint.  *(Complaint 3, ¶ 16)*.

*147:2, 148:20-25, 149:23-150:4, 150:21-151:1)*. Tomlinson also testified OSC had lifting equipment which, when functioning, assisted Tomlinson in performing his job *(Dep. 50:6-12)*, and the affidavit of OSC's Director of Human Resources states OSC made efforts which allowed Tomlinson to work within duty restrictions *(Ex. 22, ¶¶ 7-8)*. This evidence creates fact issues as to the essential functions of Tomlinson's job, and whether Tomlinson could perform those functions with or without reasonable accommodation. Tomlinson's testimony that he could not perform the essential functions of his job after termination is irrelevant to this element of Tomlinson's prima facie case.[2] See id. Thus, there are factual disputes on this element which cannot be resolved on summary disposition.

Finally, the record contains genuine issues of material fact whether Tomlinson suffered adverse employment action as a result of a disability. Although OSC claims Tomlinson had obtained a full release from Dr. West and contends OSC was unaware of any work restrictions from Dr. Mercier on the day of his termination *(Ex. 37)*, Tomlinson claimed at his deposition he was on continued work restrictions from Dr. Mercier on May 16, 2006. *(Dep. 84:7-19)*. Tomlinson also testified he told OSC about the work restrictions and gave OSC a note from Dr. Mercier listing the work restrictions. *(Dep. 92:20-24, 111:18-19, 117:11-19, 136:13-137:3, 150:10-11)*. Further, Tomlinson's handwritten notes and deposition testimony provide a potential reasonable inference that OSC management fired Tomlinson because Tomlinson went to an appointment with Dr. Mercier after being released by Dr. West. *(Exs. 13, 14; Dep. 86:9-19)*. This evidence creates a clear factual dispute as to whether Tomlinson was terminated due to a disability.

Similarly, although OSC has provided a legitimate, non-discriminatory reason for terminating Tomlinson—that OSC did not know of any work restrictions for Tomlinson, and Tomlinson was fired for insubordination—the same evidence which creates a fact issue

---

[2] Although OSC states Tomlinson has not explained alleged statements on an application for Social Security Disability benefits, these statements are irrelevant to Tomlinson's date of termination because the application was made in June 2007, over one year after Tomlinson's termination, and there is no evidence that these statements asserted Tomlinson was disabled on the day of his termination. See 29 C.F.R. App. § 1630.2(m).

regarding Tomlinson being terminated for a disability also creates a genuine issue of material fact whether OSC's reason for terminating Tomlinson was pretextual. If OSC had knowledge of the alleged work restrictions from Dr. Mercier or disapproved of Tomlinson going to an appointment with Dr. Mercier, a reasonable factfinder could conclude OSC did not fire Tomlinson for insubordination, but rather for Tomlinson's alleged disability. Thus, summary disposition on Tomlinson's ADA discrimination claim is inappropriate.

### 2.   Tomlinson's Reasonable Accommodation Claim

An employer can commit discrimination under the ADA for "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such [employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).

There are genuine issues of material fact as to whether OSC provided reasonable accommodations to Tomlinson. Tomlinson testified in his deposition that OSC placed Tomlinson in situations where he would have to work outside his restrictions when he was injured in both 2004 and 2006. *(Dep. 60:8-11, 66:3-13, 70:1-4, 72:21-25, 76:16-77:4)*. The record also establishes OSC believed Tomlinson was released to regular activity on May 1, 2006 *(Ex. 37),* and Tomlinson testified OSC had equipment which would assist Tomlinson with lifting when the equipment was functioning. *(Dep. 50:6-12)*. This evidence creates genuine issues of material fact whether OSC did or could accommodate Tomlinson, and if so, whether the accommodation was reasonable. Therefore, summary judgment is precluded on this cause of action.[3]

---

[3] As discussed earlier, this court does not interpret Tomlinson's argument and pleadings as proceeding solely on a "regarded as" theory. Thus, although OSC is correct in stating a "regarded as" theory eliminates a reasonable accommodation claim, it is not grounds for summary judgment at this time. See Finan v. Good Earth Tools, Inc., __ F.3d __, No. 08-2221, 2009 WL 1375135, at *3 (8th Cir. May 19, 2009) (citing Weber v. Strippit, Inc., 186 F.3d 907, 917 (8th Cir. 1999)).

### 3. Mitigation of Damages

OSC finally contends it is entitled to summary judgment on Tomlinson's claims for back pay, front pay, and reinstatement, because Tomlinson failed to mitigate his damages. In ADA claims,

> [a] party harmed by a discriminatory employment decision is subject to an affirmative duty to mitigate his damages by reasonably seeking and accepting other suitable employment. Finding suitable employment does not require a party to go into another line of work, accept a demotion, or take a demeaning position. A plaintiff's duty is one of reasonable diligence to seek out or not refuse a job that is substantially equivalent to the one at issue. A plaintiff's efforts to mitigate need not be successful but must represent an honest effort to find substantially equivalent work.

Mathieu v. Gopher News Co., 273 F.3d 769, 783-84 (8th Cir. 2001) (internal marks and citations omitted).

OSC is entitled to partial summary judgment on Tomlinson's claim for back pay. From the date of his termination until approximately September 2006, Tomlinson testified he actively sought jobs. *(Dep. 23:7-25:7, 118:10-14)*. Tomlinson's testimony creates a fact question as to whether Tomlinson mitigated his damages during this period. However, Tomlinson testified he stopped applying for jobs in September 2006, and the only measure he took to gain employment until January 2009 was looking for jobs in the Sunday paper. *(Dep. 119:8-121:22, 129:1-6, 160:10-25)*. This minimal effort does not represent "reasonable diligence" or an "honest effort" to find substantially similar work, and Tomlinson failed to mitigate his damages during this period. See id.

Although Tomlinson testified he began to apply for jobs again in January 2009, he unequivocally testified that, after his surgery in September 2006, he could no longer work in any position, including his former position at OSC. *(Dep. 123:1-14, 124:11-14, 129:7-16, 134:2-24)*. Other evidence in the record corroborates that Tomlinson was not able to work for at least one year after his surgery. *(Ex. 19)*. When an employee is no longer physically able to work, or is unable to perform the duties of his former work, an employer is not liable

for back pay during those periods of time. See generally 9 Lex K. Larson, Employment Discrimination § 158.02[5][b]-[c] (2d ed. 2009); see also Flowers v. Komatsu Mining Sys., Inc., 165 F.3d 554, 556-57 (7th Cir. 1999) (holding back pay was not appropriate for periods of time in which an employee could not work due to surgery).

Tomlinson has provided no evidence to the court to contradict his testimony and the other corroborating evidence that his surgery has rendered him unable to work, and Tomlinson has also not provided evidence that his ability to work has changed since he gave his testimony. Thus, summary judgment is proper on Tomlinson's claim for back pay from the earlier of (1) the date Tomlinson had surgery or (2) the date Tomlinson stopped looking for employment in September 2006 until the present, because the evidence in the record is uncontroverted that Tomlinson failed to mitigate his damages from September 2006 until January 2009, and Tomlinson has been unable to work, and unable to perform his former job, from his surgery date in September 2006 until the present.

Summary judgment is also appropriate on Tomlinson's claim for front pay. Front pay is an equitable relief which may be awarded "'to make a party whole when reinstatement is impractical or impossible.'" Ollie v. Titan Tire Corp., 336 F.3d 680, 687 (8th Cir. 2003) (quoting E.E.O.C. v. HBE Corp., 135 F.3d 543, 555 (8th Cir. 1998)). Based upon the record presented in this motion, it is undisputed Tomlinson has been unable to work since his surgery in September 2006. Thus, Tomlinson is not being damaged by OSC and cannot be made whole by an award of front pay, but rather, would be made whole by a back pay award from his termination date until the date in September 2006 when he either stopped pursuing employment or had surgery. Consequently, front pay is inappropriate in this case, and OSC is entitled to summary judgment on Tomlinson's front pay claim.

Similarly, summary judgment is proper on Tomlinson's claim for reinstatement. During his deposition, Tomlinson testified he was not seeking reinstatement at OSC with this lawsuit, and felt as though he would be uncomfortable and unable physically to work at OSC. *(Dep. 134:7-135:9).* Aside from his pleadings, Tomlinson has provided no

evidence to contradict this testimony regarding his claim for reinstatement. Thus, the record establishes reinstatement is not appropriate or practical, and OSC should be granted summary judgment on Tomlinson's reinstatement claim.

### III.     CONCLUSION

IT IS ORDERED:

1. Defendant's Objections to Plaintiff's Evidence Submitted in Opposition to Motion for Summary Judgment *(Filing No. 38)* are sustained;

2. Defendant's Motion for Summary Judgment *(Filing No. 28)* is denied as to dismissal of Plaintiff's causes of action and Plaintiff's claim for back pay from the date of Tomlinson's termination, May 16, 2006, until the earlier of when Tomlinson stopped his job search or the date of his surgery in September 2006; and

3. Defendant's Motion for Summary Judgment *(Filing No. 28)* is granted as to (1) Plaintiff's claim for back pay from the earlier of when Tomlinson stopped his job search or the date of his surgery in September 2006, (2) Plaintiff's claim for front pay, and (3) Plaintiff's claim for reinstatement.

DATED this 11th day of June, 2009.

BY THE COURT:

/s/ William Jay Riley
United States Circuit Judge
Sitting by Designation